**SHUB & JOHNS LLC**
Jonathan Shub (ID No. 237708)
Benjamin F. Johns
Samantha E. Holbrook
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
(610) 477-8380
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTNAY MOLL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v<br><br>F21 OPCO LLC D/B/A FOREVER 21; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

1

## CLASS ACTION COMPLAINT

Plaintiff Brittnay Moll ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint and alleges the following against F21 OpCo LLC (d/b/a Forever 21) and DOES 1 through 10 (collectively, "Forever 21" or "Defendants"), based upon personal knowledge with respect to herself and upon information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1.    This class action arises out of the recent data breach (the "Data Breach") involving Forever 21, which collected and stored certain personally identifiable information ("PII") and/or personal health information ("PHI") (collectively, "Private Information") of the Plaintiff and the putative Class Members.

2.    According to Forever 21, the PII compromised in the Data Breach included highly-sensitive information including but not limited to personal information, such as name, Social Security number, date of birth, bank account number (without access code or pin), and information regarding Forever21 health

2

plans, including enrollment and premiums paid.[1]

3.     Social Security numbers are particularly valuable to criminals. This information can be sold and traded on the dark web black market. The loss of a Social Security number is particularly troubling because it cannot be easily changed and can be misused in a range of nefarious activities, such as filing fraudulent tax returns to steal tax refund payments, opening new accounts to take out loans, and other forms of identity theft.

4.     The Data Breach was a direct result of Forever 21's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Plaintiff and Class Members' Private Information. Inexplicitly, Defendants have acknowledged that the cybersecurity attack occurred on March 20, 2023, but waited until August 2023 before contacting Class Members.

5.     According to a notice of data breach filed with the Attorney General of Maine, the Data Breach has affected 539,207 individuals.[2]

---

[1] Entertainment Partners Notifies 471k of Recent Social Security Number Data Breach,    JDSUPRA.COM,    https://www.jdsupra.com/legalnews/entertainment-partners-notifies-471k-of-3579067/ (last accessed August 16, 2023).

[2] Data Breach Letter, https://apps.web.maine.gov/online/aeviewer/ME/40/dfe496ce-bd38-477c-912a-

6.    This was not a passive data breach where, for example, it is unclear whether the compromised data was targeted or even seen. By Forever 21's own acknowledgement, the data breach here occurred because a "an unauthorized third party" its computer network and "obtained select files" with the sensitive personal information of Plaintiff and Class Members.

7.    Plaintiff brings this lawsuit on behalf of herself and all of those similarly situated to address Defendants' inadequate safeguarding of Class Members' Private Information that they collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information was unsecured and left open to the unauthorized access of any unknown third party.

**JURISDICTION AND VENUE**

8.    The Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members

---

26bd54798369/7b58242e-7429-4aea-bc05-b365e9e0d461/document.html (last accessed September 6, 2023).

exceeds 100, many of whom have different citizenship, including certain Plaintiff. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

9.     This Court has personal jurisdiction over Forever 21 because its principal place of business is in this District and it conducts substantial business in this District.

10.     Venue is proper in this District because Forever 21's principal place of business is in this District and a significant amount of the events leading to Plaintiff's causes of action occurred in this District.

## **PARTIES**

### **Plaintiffs**

11.     Plaintiff Brittnay Moll is an adult, who at all relevant times, was a resident and citizen of Santa Clara County in the state of California.

12.     On or around September 6, 2023, Plaintiff Moll received a notice from Forever 21 informing her that her PII had been compromised during the Data Breach.

13.     Plaintiff Moll was previously employed by Defendant at the Forever 21 Great Mall Location at 447 Great Mall Drive, Milpitas, CA 95035. She worked as a Sales Associate in 2020. She provided her Personal Information to Forever 21 as a condition of her employment, and reasonably anticipated that Forever 21 would safeguard this information.

5

14.    Plaintiff Moll has spent several hours addressing the fraudulent activity and otherwise as a result of the Data Breach. The time spent dealing with these incidents resulting from the Data Breach is time Plaintiff Moll otherwise would have spent on other activities, such as work and/or recreation. Moreover, the time Plaintiff lost was spent at Defendants' direction. Indeed, in the notice letter Plaintiff Moll received, Defendants directed Plaintiff to spend time mitigating harm on her accounts by monitoring her personal information for unauthorized activity.

15.    Plaintiff Moll plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing her accounts for any unauthorized activity.

**Defendants**

16.    Defendant F21 OpCo LLC d/b/a Forever 21 is a fashion retailer that sells accessories, beauty products, home goods, and clothing for women, men and children. Its principal place of business and headquarters is located at 110 East 9th Street, Suite A500, Los Angeles, California, 90079.

17.    The true names and capacities, whether individual, corporate, associate, representative, alter ego or otherwise, of defendants named in this action as DOES 1 through 10 inclusive are presently unknown to Plaintiff, who therefore sues such defendants by such fictitious names. Plaintiff will seek to amend this

Complaint to allege the true names and capacities of DOES 1 through 10 when the same have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiff and the Class Members for the events, happenings, and damages set forth below.

18.    Plaintiff is informed and believes, and based thereon alleges, that at all relevant times mentioned herein, Defendants acted as agents, employees, supervisors, partners, conspirators, servants and/or joint venturers of each other, and in doing the acts hereafter alleged, were acting within the course, scope, and authority of such agency, employment, partnership, conspiracy, enterprise and/or joint venture, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants.

## **FACTUAL ALLEGATIONS**

19.    Plaintiff and the proposed Class are customers of Defendants. Forever 21 is an organization in the fashion industry who describes itself as "a fashion industry leader making the latest trends accessible to all while inspiring unique style and confidence."[3]

---

[3] https://www.forever21.com/us/aboutus/aboutus.html (last accessed on September 6, 2023)

20.     As noted above, Plaintiff brings this class action against Forever 21 for Defendants' failure to properly secure and safeguard personally identifiable information, for failing to comply with industry standards to protect and safeguard that information, and for failing to provide timely, accurate, and adequate notice to Plaintiff and other members of the Class that such information had been compromised.

### Forever 21's Unsecure Data Management and Disclosure of Data Breach

21.     Plaintiff and Class Members provided their PII to Forever 21 with the reasonable expectation and mutual understanding that Forever 21 would comply with its obligations to keep such information confidential and secure from unauthorized access.

22.     Data security is purportedly a critical component of Forever 21's business model. On its website, it maintains "…. our main goals are to gain and maintain your trust, including by addressing any questions or concerns you might have about the privacy and safety of your personal information when it is in our hands. In this regard, we have partnered with OneTrust, a leading technology platform, to allow us to better communicate with you and to respond to your

requests more efficiently. maintain similar advanced standards for their hosting facilities to protect against unauthorized access."[4]

23.     According to its August 29, 2023 letter concerning the breach, on or around March 20, 2023, Forever 21 noticed that "an unauthorized third party accessed certain Forever 21 systems at various times between January 5, 2023 and March 21, 2023. Findings from the investigation indicate the unauthorized third party obtained select files from certain Forever 21 systems during this time period, [5] impacting the personal information of Plaintiff and Class Members.

24.     The database files that were compromised by the unnamed "sophisticated threat actor" included names, mailing addresses, Social Security numbers and other information related to prior productions.

25.     As such, Forever 21 failed to secure the PII of the individuals that provided it with this sensitive information.  It failed to take appropriate steps to protect the PII of Plaintiff and other Class Members from being disclosed.

_____

[4] https://www.forever21.com/us/privacypolicy.html (last accessed on September 6, 2023)

[5] Data Breach Letter.

## **Plaintiff and the Class Have Suffered Injury as a Result of Forever 21's Data Mismanagement**

26.      As a result of Forever 21's failure to implement and follow even the most basic security procedures, Plaintiff's and Class Members' Private Information has been and is now in the hands of "an unauthorized third party" which may include thieves, unknown criminals, banks, credit companies, and other potentially hostile individuals. Plaintiff and other Class Members now face an increased risk of identity theft, particularly due to the dissemination of personal information, such as their name, Social Security number, date of birth, bank account numbers, and/or information regarding their Forever21 health plan, including enrollment and premiums paid, and will consequentially have to spend, and will continue to spend, significant time and money to protect themselves due to Forever 21's Data Breach.

27.      Plaintiff and other Class Members have had their most personal, sensitive and Private Information disseminated to the public at large and have experienced and will continue to experience emotional pain and mental anguish and embarrassment.

28.      Plaintiff and Class Members face an increased risk of identity theft, phishing attacks, and related cybercrimes because of the Data Breach. Those

10

impacted are under heightened and prolonged anxiety and fear, as they will be at risk for falling victim for cybercrimes for years to come.

29.    PII is a valuable property right.[6] The value of PII as a commodity is measurable. "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[7] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[8] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

_____

[6] *See* Marc van Lieshout, *The Value of Personal Data*, 457 IFIP ADVANCES IN INFORMATION AND COMMUNICATION TECHNOLOGY 26 (May 2015), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_D ata ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible...").

[7] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD 4 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[8] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERTISING BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

30.    As a result of its real value and the recent large-scale data breaches, identity thieves and cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

31.    Personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[9] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[10] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[11]

32.    Consumers place a high value on the privacy of that data. Researchers shed light on how much consumers value their data privacy—and the amount is

---

[9] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[10] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/

[11] *In the Dark*, VPNOverview.com, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed on August 16, 2023).

considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[12]

33.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Private Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

34.    Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals… because they often have lesser IT defenses and a high incentive to regain access to their data quickly.[13]

_____

[12] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1.

[13] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited February 13, 2023).

13

35.    Plaintiff and members of the Class, as a whole, must immediately devote time, energy, and money to: 1) closely monitor their bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than they already do; 3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

36.    Once PII is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Forever 21's conduct. Further, the value of Plaintiff's and Class Members' PII has been diminished by its exposure in the Data Breach.

37.    As a result of Forever 21's failures, Plaintiff and Class Members are at substantial risk of suffering identity theft and fraud or misuse of their Private Information.

38.    Plaintiff and members of the Class suffered actual injury from having PII compromised as a result of Forever 21's negligent data management and resulting Data Breach including, but not limited to (a) damage to and diminution

14

in the value of their PII, a form of property that Forever 21 obtained from Plaintiff; (b) violation of their privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

39.    For the reasons mentioned above, Forever 21's conduct, which allowed the Data Breach to occur, caused Plaintiff and members of the Class these significant injuries and harm.

40.    Plaintiff brings this class action against Forever 21 for their failure to properly secure and safeguard PII and for failing to provide timely, accurate, and adequate notice to Plaintiff and other Class Members that their Private Information had been compromised.

41.    Plaintiff, individually and on behalf of all other similarly situated individuals, alleges claims in negligence, negligence per se, breach of implied contract, breach of fiduciary duty, and unjust enrichment, violations of the California Consumer Privacy Act and California Legal Remedies Act, and California's Unfair Competition Law.

**CLASS ACTION ALLEGATIONS**

42.    This action is brought, and may properly proceed, as a class action, pursuant to the California Rules of Court.

43.    Plaintiff seeks certification of a class defined as follows:

All persons whose PII was compromised in the Data Breach as detected by Forever 21 on or around March 20, 2023, including all who received Notice of the Data Breach (the "Class").

44.     Excluded from the Class are Forever 21's officers and directors, and any entity in which Forever 21 has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Forever 21. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

45.     **Numerosity**:  The members of the Class are so numerous that joinder of all of them is impracticable. As noted above, there are approximately 539,207 consumers affected.

46.     **Existence/Predominance of Common Questions of Fact and Law**: There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  Whether Forever 21 unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b.  Whether Forever 21 failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

16

c. Whether Forever 21's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Forever 21's data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Forever 21 owed a duty to Class Members to safeguard their Private Information;

f. Whether Forever 21 breached its duty to Class Members to safeguard their Private Information;

g. Whether computer hackers obtained Class Members' Private Information in the Data Breach;

h. Whether Forever 21 knew or should have known that its data security systems and monitoring processes were deficient;

i. Whether Forever 21's conduct was negligent;

j. Whether Forever 21's acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

k. Whether Forever 21's acts breaching an implied contract they formed with Plaintiff and the Class Members;

l. Whether Forever 21 violated the Federal Trade Commission Act

17

("FTC Act");

    m. Whether Forever 21 was unjustly enriched to the detriment of Plaintiff and the Class;

    n. Whether Forever 21 failed to provide notice of the Data Breach in a timely manner; and

    o. Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

47.   **Typicality**:   Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach.

48.   **Adequacy**:   Plaintiff is an adequate representative for the Class because her interests do not conflict with the interests of the Class that she seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex class action litigation—including consumer fraud and automobile defect class action cases—and counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her experienced counsel.

49.   **Superiority**:   A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class.

The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Forever 21's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Forever 21. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, etc.) Forever 21 maintains regarding their consumers.

50.    Defendant has acted, and refuses to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE

51.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

52.    Forever 21 owed a duty to Plaintiff and all other Class Members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control.

53.    Forever 21 knew, or should have known, the risks of collecting and storing Plaintiff's and all other Class Members' PII and the importance of maintaining secure systems. Forever 21 knew, or should have known, of the vast uptick in data breaches in recent years. Forever 21 had a duty to protect the PII of Plaintiff and Class Members.

54.    Given the nature of Forever 21's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, Forever 21 should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring, which Forever 21 had a duty to prevent.

55.    Forever 21 breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor,

20

and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Private Information entrusted to it—including Plaintiff's and Class Members' Private Information.

56.     It was reasonably foreseeable to Forever 21 that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class Members' PII to unauthorized individuals.

57.     But for Forever 21's negligent conduct or breach of the above-described duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

58.     As a result of Forever 21s's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and all other Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to

compensation; (ii) improper disclosure of their Private Information; (iii) breach of the confidentiality of their Private Information; (iv) deprivation of the value of their Private Information, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) actual or attempted fraud.

## COUNT II
## NEGLIGENCE PER SE

59.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

60.     Forever 21's duties arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by a business, such as Forever 21, of failing to employ reasonable measures to protect and secure PII.

61.     Forever 21 violated Security Rules and Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and all other Class Members' Private Information and not complying with applicable industry standards. Forever 21's conduct was particularly unreasonable given the nature and amount of Private Information it obtains and stores, and the foreseeable

consequences of a data breach involving Private Information including, specifically, the substantial damages that would result to Plaintiff and the other Class Members.

62.    Forever 21's violations of Security Rules and Section 5 of the FTCA constitutes negligence per se.

63.    Plaintiff and Class Members are within the class of persons that Security Rules and Section 5 of the FTCA were intended to protect.

64.    The harm occurring as a result of the Data Breach is the type of harm Security Rules and Section 5 of the FTCA were intended to guard against.

65.    It was reasonably foreseeable to Forever 21 that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class Members' Private Information to unauthorized individuals.

66.    The injury and harm that Plaintiff and the other Class Members suffered was the direct and proximate result of Forever 21's violations of Security Rules and Section 5 of the FTCA. Plaintiffs and Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the

form of, *inter alia*: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their Private Information; (iii) breach of the confidentiality of their Private Information; (iv) deprivation of the value of their Private Information, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach; and (vi) actual or attempted fraud.

## COUNT III
## BREACH OF FIDUCIARY DUTY

67.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

68.    Plaintiff and Class Members either directly or indirectly gave Forever 21 their PII in confidence, believing that Forever 21 would protect that information. Plaintiff and Class Members would not have provided Forever 21 with this information had they known it would not be adequately protected. Forever 21's acceptance and storage of Plaintiff's and Class Members' PII created a fiduciary relationship between Forever 21 and Plaintiff and Class Members. In light of this relationship, Forever 21 must act primarily for the benefit of its consumers, which includes safeguarding and protecting Plaintiff's and Class Members' Private Information.

69.     Forever 21 has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the integrity of the system containing Plaintiff's and Class Members' Private Information, failing to safeguard the Private Information of Plaintiff and Class Members it collected.

70.     As a direct and proximate result of Forever 21's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their Private Information which remains in Forever 21's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the Private Information compromised as a result of the Data Breach; and (vii) actual or attempted fraud.

## COUNT IV
## UNJUST ENRICHMENT

71.     Plaintiff  realleges  and  incorporates  by  reference  all  preceding paragraphs as if fully set forth herein. This claim is pled in the alternative to the implied contract claim pursuant to Fed. R. Civ. P. 8(d).

72.     Plaintiff and  Class  Members  conferred  a  monetary  benefit  upon Forever 21 in the form of monies paid for production services or other services.

73.     Forever 21 accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class Members. Forever 21 also benefitted from the receipt of Plaintiff's and Class Members' Private Information.

74.     As a result of Forever 21's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

75.     Forever 21 should not be permitted to retain the money belonging to Plaintiff and Class Members because Forever 21 failed to adequately implement the data privacy and security procedures for itself that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, and local laws. and industry standards.

76.     Forever 21 should be compelled to provide for the benefit of Plaintiff
and Class Members all unlawful proceeds received by it as a result of the conduct
and Data Breach alleged herein.

## COUNT V
## BREACH OF IMPLIED CONTRACT

77.     Plaintiff realleges and incorporates by reference all allegations of the
preceding factual allegations as though fully set forth herein.

78.     Defendant required Plaintiff and Class Members to provide, or
authorize the transfer of, their PII in order for Forever 21 to provide services. In
exchange, Forever 21 entered into implied contracts with Plaintiff and Class
Members in which Forever 21 agreed to comply with its statutory and common
law duties to protect Plaintiff's and Class Members' Private Information and to
timely notify them in the event of a data breach.

79.     Plaintiff and Class Members would not have provided their Private
Information to Forever 21 had they known that Forever 21 would not safeguard
their Private Information, as promised, or provide timely notice of a data breach.

80.     Plaintiff and Class Members fully performed their obligations under
their implied contracts with Forever 21.

81.    Defendant breached the implied contracts by failing to safeguard Plaintiff's and Class Members' Private Information and by failing to provide them with timely and accurate notice of the Data Breach.

82.    The losses and damages Plaintiff and Class Members sustained (as described above) were the direct and proximate result of Forever 21's breach of its implied contracts with Plaintiff and Class Members.

**COUNT VI**
**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT OF 2018**
**Cal. Civ. Code §§ 1798.100 *et seq.* ("CCPA")**

83.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

84.    As more personal information about consumers is collected by businesses, consumers' ability to properly protect and safeguard their privacy has decreased. Consumers entrust businesses with their personal information on the understanding that businesses will adequately protect it from unauthorized access.

85.    As a result, in 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. Among other things, the CCPA imposes an affirmative duty on certain businesses that maintain personal information about California residents to

implement and maintain reasonable security procedures and practices that are
appropriate to the nature of the information collected.

86.    Forever 21 is subject to the CCPA and failed to implement such
procedures which resulted in the Data Breach.

87.    Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose
nonencrypted or nonredacted personal information, as defined [by the CCPA] is
subject to an unauthorized access and exfiltration, theft, or disclosure as a result of
the business' violation of the duty to implement and maintain reasonable security
procedures and practices appropriate to the nature of the information to protect the
personal information may institute a civil action for" statutory or actual damages,
injunctive or declaratory relief, and any other relief the court deems proper.

88.    Plaintiff is a "consumer" as defined by Civ. Code § 1798.140(g)
because she is natural person residing in the state of California.

89.    Forever 21 is a "business" as defined by Civ. Code § 1798.140(c).

90.    The CCPA provides that "personal information" includes "[a]n
individual's first name or first initial and the individual's last name in combination
with any one or more of the following data elements, when either the name or the
data elements are not encrypted or redacted . . . (iii) Account number or credit or
debit card number, in combination with any required security code, access code,

or password that would permit access to an individual's financial account." *See* Civ. Code § 1798.150(a)(1); Civ. Code § 1798.81.5(d)(1)(A).

91.    Plaintiff's Private Information compromised in the Data Breach constitutes "personal information" within the meaning of the CCPA.

92.    Through the Data Breach, Plaintiff's private information was accessed without authorization, exfiltrated, and stolen by criminals in a nonencrypted and/or nonredacted format.

93.    The Data Breach occurred as a result of Forever 21's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

94.    Simultaneously herewith, Plaintiff is providing notice to Defendants pursuant to Cal. Civ. Code § 1798.150(b)(1), identifying the specific provisions of the CCPA Plaintiff alleges Forever 21 has violated or is violating. Although a cure is not possible under the circumstances, if (as expected) Forever 21 is unable to cure or does not cure the violation within 30 days, Plaintiff will amend this Complaint to pursue actual or statutory damages as permitted by Cal. Civ. Code § 1798.150(a)(1)(A). Plaintiff currently seeks injunctive and declaratory relief pursuant to this CCPA.

95.    Provided that Defendant does not cure the violation within 30 days, and as a result of Forever 21's failure to implement and maintain reasonable

security procedures and practices that resulted in the Data Breach, Plaintiff intends to seek statutory damages of up to $750 per class member (and no less than $100 per class member), actual damages to the extent they exceed statutory damages, injunctive and declaratory relief, and any other relief as deemed appropriate by the Court.

## COUNT VII
## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
## Cal. Civ. Code §§ 1750 et seq. ("CLRA")

96.    Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

97.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.* This cause of action does not seek monetary damages at this time but is limited solely to injunctive relief. Plaintiff will later amend this Complaint to seek damages in accordance with the CLRA after providing Defendants with notice required by California Civil Code § 1782.

98.    Plaintiff and Class Members are "consumers," as the term is defined by California Civil Code § 1761(d).

99.    Plaintiff, Class Members and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

31

100.   The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct undertaken by Defendants was likely to deceive consumers.

101.   Cal. Civ. Code § 1770(a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

102.   Defendants violated this provision by representing that Defendants took appropriate measures to protect Plaintiff's and the Class Members' Private Information. Additionally, Defendants improperly handled, stored, or protected either unencrypted or partially encrypted data.

103.   As a result, Plaintiff and the Class Members were induced to provide their Private Information to Defendants.

104.   As a result of engaging in such conduct, Defendants have violated Civil Code § 1770.

105.   Pursuant to Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Defendants from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

106.   Plaintiff and the Class Members suffered injuries caused by Defendants' misrepresentations, because they provided their PII believing that Defendants would adequately protect this information.

107.   Plaintiff and Class Members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

108.   The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff and members of the Class.

## COUNT VIII

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. and Prof. Code §§ 17200, *et seq.* ("UCL")

109.   Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

110.   Plaintiffs brings this claim on behalf of themselves and the Class.

111.   The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

112.   By reason of Defendants' above-described wrongful actions, inaction, and omission, the resulting Data Breach, and the unauthorized disclosure of

Plaintiff's and Class members' PII, Defendants engaged in unlawful, unfair and fraudulent practices within the meaning of the UCL.

113.   Defendants' business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, in that the private and confidential Private Information of consumers has been compromised for all to see, use, or otherwise exploit.

114.   Defendants' practices were unlawful and in violation of the CCPA and CLRA and Defendants' own privacy policy because Defendants failed to take reasonable measures to protect Plaintiff's and Class members' Private Information.

115.   Defendants' business practices as alleged herein are fraudulent because they are likely to deceive consumers into believing that the PII they provide to Defendants will remain private and secure, when in fact it was not private and secure.

116.   Plaintiff and Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendants' above-described wrongful actions, inaction, and omissions including, *inter alia*, the unauthorized release and disclosure of their Private Information.

117.   Defendants' above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure

of Plaintiff's and Class Members' Private Information also constitute "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200 *et seq.*, in that Defendants' conduct was substantially injurious to Plaintiff and Class Members, offensive to public policy, immoral, unethical, oppressive and unscrupulous, and the gravity of Defendants' conduct outweighs any alleged benefits attributable to such conduct.

118.    But for Defendants' misrepresentations and omissions, Plaintiff and Class Members would not have provided their Private Information to Defendants, or would have insisted that their Private Information be more securely protected.

119.    As a direct and proximate result of Defendants' above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff and Class Members' Private Information, they have been injured as follows: (1) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their Private Information entrusted to Defendants; (3) the increased, imminent risk of fraud and identity theft; (4) the compromise, publication, and/or theft of their Private Information; and (5) costs associated with monitoring their Private Information, amongst other things.

120.    Plaintiff takes upon herself enforcement of the laws violated by Defendants in connection with the reckless and negligent disclosure of Private

35

Information.  There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiff by forcing her to pay attorneys' fees and costs from the recovery in this action.  Therefore, an award of attorneys' fees and costs is appropriate under California Code of Civil Procedure § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, pray for judgment as follows:

a.    For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class;

b.    For equitable relief enjoining Forever 21 from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information;

c.    For equitable relief compelling Forever 21 to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

d.    For an order requiring Forever 21 to pay for credit monitoring services for Plaintiff and the Class of a duration to be determined at trial;

e.    For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

f.    For an award of punitive damages, as allowable by law;

36

g.    For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

h.    Pre and post-judgment interest on any amounts awarded; and

i.    Such other and further relief as this court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: September 7, 2023                    Respectfully Submitted By:


By:   *s/ Jonathan Shub*

**SHUB & JOHNS LLC**
Jonathan Shub (No. 237708)
Benjamin F. Johns*
Samantha E. Holbrook*
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
(610) 477-8380
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

*Attorneys for Plaintiff and the Proposed Class*

**Pro Hac Vice Forthcoming*